Good morning, Your Honors. Jim Choi on behalf of the appellants. Your Honors, Carceri v. Ceballos, the U.S. Supreme Court case, which is central to the First Amendment issue in this case, stands for certain basic First Amendment principles that cannot be reconciled with the prosecution of the plaintiff's First Amendment claimant in this case. It's a civil case, isn't it? Excuse me? This is a civil case? A civil case? Yes. Oh, okay. When I meant prosecution, I meant litigation. Okay. Public employees, by virtue of their employment with the government, are not deprived of the right to engage in citizenship-motivated speech, the right to participate in public debates, public affairs, the right to engage in societal exchange of ideas with other citizens. However, public employees do not speak as citizens when they engage in speech at work with their coworkers regarding issues directly relevant to their job duties. They are not afforded First Amendment protection for such speech. Otherwise, all government employers will be constitutionally restricted from taking employment actions in response to employees' job-related speech. This balance between the public employee's right to engage in citizen speech and the public employer's ability to manage its everyday functions and operations is what the Supreme Court addressed in Garcetti. The Supreme Court held that public employees, when they express themselves as citizens, they are afforded First Amendment protection. However, that's not the case when they do not engage in citizen speech. And I think it's very clear, Your Honor, that the speech in this case, the statements that the plaintiff made to other members of the DA's office, clearly was not citizen speech. It was speech that he engaged in because of his employment with the DA's office. There was a recent Ninth Circuit case, Posey v. Lake Penn Borough School District, which I believe has some relevance in this case. I believe, Your Honor, Judge Hopkins authored the opinion. It was published about a month ago. In that case, the speech involved something very different in nature and substance. The plaintiff in that case was essentially a security guard-type person at a school. He was responsible for monitoring hallways and the parking lot. While he was at home, based on his own volition, without any instruction from any school officials, he wrote a letter to, I believe the – excuse me for a second. It was boss. To the chief administrative officer of the school district. So it wasn't even his immediate supervisor. And the letter addressed an array of topics that had – many of which had no connection to his job. A couple issues that did have connection, it was a very remote connection. And what the defendants argued in that case was, on semi-judgment, well, the letter is – the letter was formed on the basis of the First Amendment claim. The letter was written pursuant to his job duties. Well, not really. Clearly, he was not being paid to write that letter. He wrote that letter from home on his own stationery for whatever reason he felt the need to write that letter. And that letter, this Court found – These cases are never completely clear. I was on that panel, wrote the decision. In fact, this guy had been demoted several times. And the argument, which I thought had some weight to it from the other side, was that what he was really complaining about was that he had been demoted. His job duties had been restricted. And therefore, even though he typed it at home and signed his name, it really was kind of an internal grievance. So, you know, I'm not sure the fact-distinguishing is going to get you a whole long way, at least with me. What specific statements formed the basis for transferring – that is, the allegation was that he was transferred to a less important job? That he was subsequently reassigned from the task force, and that he was reassigned to the juvenile court, which he believed acted as a demotion. There was no formal demotion. He also alleges that – Hey, listen. You're talking to an old prosecutor here. When you're doing serious public corruption investigations, and you disagree with the boss, and you find yourself in juvie, you've been demoted. Okay? You've been demoted. Well, those were the acts that – the adverse employment actions, the alleged adverse employment actions that formed the basis of the claim. The statements that are left at this point – What did he say? He basically – as a member of the Belmont task force, which consisted of three or four other prosecutors, at a July 2001 meeting with the executive staff of the VA's office, he recommended that no environmental issues – issue-related crimes be charged. And the district court correctly found, okay, that speech, that's not protected by the First Amendment. That's not before us. That's not before us. Okay. What is before us? What is before us is that he also made statements to VA personnel at that meeting that he believed that other members of the Belmont task force, an investigator and a prosecutor, had engaged in improper investigative tactics. He said that he had concerns that information regarding the way the LAUSD was financing his project had been improperly leaked to the IRS. And I will submit, Your Honor, that that statement, when you look at the context in which it was made, obviously internally, obviously related to the task force, the investigation engaged in by the task force, he believed that those activities may endanger or undermine the overall objectives of the task force. Those comments were clearly a direct result of the fact that he was a prosecutor. Let me see if I can frame this, and you tell me if I've got my facts out of focus. The district attorney was running for office, correct? Yes. And in the course of that campaign said that this Belmont school project badly needed to be investigated because there were real problems with it, right? That was one of his campaign issues. The prior administration under Mr. Garcetti did an investigation and found no basis to pursue criminal charges. And that was an issue that Mr. Cooley did raise during his campaign. Okay. And once he got into office, the investigation moved forward? Correct. And Mr. Ng was part of that investigation? Yes. And when at the end of that investigation, he recommended to the prosecutor's office that not proceed further, that the Garcetti decision was in fact correct? It was not the end of the investigation. It was a meeting that they had about six months or so after. He thought it was going nowhere. He thought it was a political football and that the district attorney was simply trying to justify what he had campaigned on, right? Based on the evidence that he reviewed, his conclusion was that no case has to be investigated. Okay. Why isn't that a matter of public concern? I'm not disputing that it is a matter of public concern, Your Honor. Okay. Now, didn't they also not only transfer him to juvenile, but didn't they investigate him for sexual harassment? It was a relationship that he had with a law clerk. Was he investigated for sexually harassing a subordinate? He was investigated regarding that relationship. Okay. And almost immediately upon the commencement of it, didn't the woman come in and say, this was not harassment? It was a consensual relationship. He never harassed me? I think the record is that she gave conflicting statements, Your Honor. She gave, you know, she did she say the relationship was consensual? She why is it so hard to say yes? I'm just trying to be as accurate as possible, Your Honor. I don't think there was any allegation that it was not a consensual relationship. The allegation was ultimately that this was a situation where he exercised improper judgment in engaging in the relationship with a subordinate. And he was prosecuted? No. He wasn't prosecuted for that, Your Honor. What was he prosecuted for? He was prosecuted by the AG's office. For what? For having improperly, having essentially caused somebody else to access a criminal database relating to information pertinent to his ex-wife's boyfriend. And that was a database that wasn't supposed to be accessed for personal uses. What happened with those charges? That criminal case was dismissed a few months after it was filed. Okay. And the AG's office then? Does his complaint allege that that action was part of the retaliation? Not the filing. I don't believe it's the filing of the criminal complaint, because the AG's office is the one, is the agency that filed the case. Didn't he also complain about leaks to the Internal Revenue Service? That's the only statement, Your Honor, that remains in terms of and supports his 1983 First Amendment claim. Well, there's a third-party problem involving his lawyer, too. Right. Your Honor, that's a separate issue to which the Garcetti analysis does not apply. But as to the statements that he made regarding his concerns that other members of the task force had essentially engaged in misconduct, I would submit that those are statements that he made pursuant to his job duties as a prosecutor assigned to that very task force. But the public has no interest in knowing whether State prosecutors are improperly leaking false information to Federal investigative agencies. Is that your statement? Is that what you're saying? No, Your Honor. I'm not saying that the topic of this statement is not a matter of performance. You're saying that was a job duty of his. Yes, Your Honor. I'm not making this a reality case. It was his job duty to report such things? Yes. He was a member of a tight-knit task force, and they were investigating various issues related to the Belmont Learning Center. During this while he was a member of the task force, he learned that certain things that he believed were improper, things that were being done improperly by another prosecutor and another investigator also assigned to the task force. He commented about that. He expressed those concerns to other members of the DA's office. Our position, Your Honor, is that those comments are comments that do not entitle to First Amendment protection under our city analysis. There are several cases from the Seventh Circuit involved very similar facts, such as the Sigsworth case, the Gold Street Clement case. Those cases involve police officers who essentially learn about potential misconduct by other police officers, whether they're part of the same task force or a completely different unit. And in those cases on motions to dismiss, the Court found that as a matter of law, that speech that was expressed pursuant to the officer's normal job duties. Doesn't he also allege that part of the retaliation is for statements not made by him but made by his lawyer? That's the other part of the 1983 claim. And I was at this point focusing on the guard city analysis, but I could switch to the Okay. As to the attorney, the claim, just to put in some more details regarding that part of the claim, his attorney made some statements that were reported in the Los Angeles Times in, I believe, February 20, 2003. And certain actions that were taken or he wasn't promoted, he's alleging that it was in retaliation for his attorney's speech. And, you know, we don't know. We take that as true here, right? Right. And my argument is that Qualified Immunity specifically, that the plaintiffs did not have a clearly established First Amendment right to pursue a First Amendment claim based on that theory. There are a couple cases that we've briefed below. They're both district court opinions for New York, basically one calling on either side of the equation. And I think the absence of case law, you know, establishing that, you know, let's say I have a right to pursue a First Amendment claim because my attorney said something. I think the absence of controlling case law on that issue essentially demonstrates the absence of any showing that that's a clearly established First Amendment right. Well, the attorney presumably speaks to the client, doesn't he? Well, generally, Your Honor, the Supreme Court cases that say you shouldn't pursue constitutional claims on a vicarious theory. And the exception that the plaintiff talks about in his brief, a single-family work case. The attorney does speak for the client, right? You know, in the prosecutor's office, they make a lot of statements that go into the press. You know, when they file a complaint or an indictment is returned, you get a whole speech on that. And so he's part of this Belmont task force. There was a huge scandal in this city, wasn't it, huh? Come on. It was in the news, Your Honor. Yeah, it was. It was a huge problem and tremendous overruns and expenses and where the property was situated and all the rest of it. So he learns of certain improprieties and he's concerned about it. Those improprieties are certainly a matter of public concern. And I would think he'd have a duty to disclose that information because there's always a tendency. You know, if you get into a small group of people, they keep all that stuff out of sight, hidden. Your Honor, just to be clear, the speech that Mr. Ng's First Amendment claim is based on what the attorney spoke about through the newspaper or his statements regarding the alleged improper conduct by other task force members, we're not contending that those do not involve matters of public concern. But we are contending as to the statements about other task force members. If you look at the most analogous cases throughout the country, whether it's Seventh Circuit, Eighth Circuit, D.C. Circuit, and one of the cases cited in the Posey case, which is the Davis v. Cook County case. Let me just see if I'm clear about this. You're saying that there are some of the allegations made in his complaint that you and your clients concede can go forward? No, Your Honor. The Garcetti analysis. You want an outright reversal of the denial of qualified immunity? Yes, Your Honor. Okay. And how do you do it? We were talking about third-party statements. How do you deal with Wasson? Which case? Wasson v. Sonoma County Junior College. It's a 2000 decision where a junior college professor was mistakenly fired for statements made by another, and the Court announced a three-pronged test for asserting First Amendment rights where the speech has been made by some other person. Your Honor, I'm not familiar with that case. I'm not familiar with that case. If the Court would welcome additional briefing on that, I certainly would submit that. I know for a fact that ---- Are you going to talk about Wasson? I will if you want me to, Your Honor. You're familiar with it? I am. I also know that the district court relied on that case in its ruling denying a Peltier 6 motion, so it's in the record. Can I double-check that, Your Honor, real quick? Because what the district court relied on was essentially the ---- Maybe you can take that up in rebuttal. Garcetti involved the filing of a report, and the report was the speech that was in question, right? Well, what the Supreme Court said in Garcetti, in that case it was a disposition memorandum. It's a clear case of something that's within the job responsibility. In that case, it was a disposition memorandum. Unless we get into all these other things, then we get into difficulties, right? Well, I would ---- I know I'm running past on time, but I think it's important to emphasize that the U.S. Supreme Court in Garcetti drew a sharp dichotomy between citizen speech and basically noncitizen speech. And if you look at the cases that have been published since Garcetti, speech ---- and here I'm speaking about the statements regarding the conduct of other task force members that the plaintiff was a member of. That speech or that speech falls clearly within the scope of speech in other cases where they found, okay, this is speech that was expressed because of your job. It wasn't citizen speech. And because of that, as a matter of law, there's no First Amendment protection. And in the Cook v. Davis, Davis v. Cook County case that was cited in the recent Posey case, you had a nurse submitting a memorandum about various things that she had problems with at the hospital. And in that case, the Seventh Circuit held, no rational trial of fact could hold that this was citizen speech, that this was not related to her job duties. And I was ---- The impression sitting in various circuits is that there's going to be considerable difficulty in getting a unanimous interpretation of Garcetti. I understand. Interpretations that are in some great variance. I understand that, Your Honor. But I think this is a case where the speech was expressed internally to other members intricately involved in the task force and the comments related to activities of other members of the task force. When you have that kind of speech, that falls purely within the scope of the non-citizen speech that the Supreme Court said in Garcetti is not in First Amendment protection. I would like to give a few minutes for rebuttal. It's not like a formula for a cover-up. Wasson, by the way, was cited in the red brief. That's our brief, Your Honor. Yes. Right. Yeah. Just to address that question first off, by the way, I'm Shea Ridd, Your Honors. Good morning. I represent the Plaintiff Napali David Eng. Before I address Wasson, I do want to focus on really why we're here and what the issue is. The issue on this interlocutory appeal is not whether Mr. Eng has established a constitutional violation under Garcetti. It's not whether appellants have a meritorious defense based on qualified immunity. The question is whether the district court erred in finding disputed facts that precluded entering summary judgment on the qualified immunity defense. That's the issue that we're here on. Now, interlocutory appeals are sometimes permissible to challenge a district court's denial of a summary judgment motion on the issue of qualified immunity, but not always. And our first argument is that this Court doesn't even have jurisdiction to address that appellant's argument because the U.S. Supreme Court in Johnson v. Jones in the ninth circuit. That's the Breyer opinion from Johnson. That's the Breyer opinion, exactly, Your Honor. It makes it clear that the point of giving an interlocutory appeal in the instance where you've got a qualified immunity defense is if you've got undisputed facts and you've got individual public officials who have reason to believe that they never even should have known their conduct was actionable in the first place, that you get them out of the case quickly. And so you have an ability before the case even goes to trial to give those public officials a chance to do that through an interlocutory appeal. If the qualified immunity defense, though, is based on facts that get disputed and the district court denies summary judgment because of those disputed facts, that's not a proper basis for an interlocutory appeal. That's the Johnson case and that's the Kennedy case as well out of the ninth circuit. We would submit that this is much more akin to Johnson, our dispute here. We – Your contention is this is purely fact-based. It is fact-based, Your Honor. And for two reasons we know it's fact-based. First, because Judge Wright said it was fact-based in his decision. He said there are material disputes of fact as to whether or not Mr. Eng's speech was job-related that preclude me from entering summary judgment in favor of the defendants  And we also know it's fact-based because of the Court's decision in Posey. Now, when we made our jurisdictional argument in their reply brief, the appellants came back and said, look, this is an issue of law, whether or not Mr. Eng's speech was job-related, and they cited the Davis case out of the Fifth Circuit. Now, it's unfortunate for them that within a couple months this Court issued the Posey opinion where it said we reject the Fifth Circuit's analysis of whether the issue of job-related speech is one of law. We say, we the Ninth Circuit say, that the issue is one of disputed fact. Didn't we say that was a mixed question of fact and law? A mixed question of fact and law, but where there's disputed facts, it's not proper on summary judgment to grant summary judgment in favor of a qualified immunity defense. And we submit that our dispute has much more factual disputes than you even had in Posey. As I recall in Posey, you had a guy who was, I believe his title was like security supervisor. And a number of his complaints that were made internally, by the way, Mr. Eng – I'm sorry, Mr. Choi's, the appellant's contention is that somehow all internal complaints are going to be deemed job-related speech. Mr. Posey's complaints were internal. But there was some dispute about whether it was really part of his job or not, whether being a security supervisor really meant he was part of his effort to get his job back. It was part of his effort to get his job back. He had some personnel grievances mixed in with these things. But it was – and the parties themselves had jumped back and forth about whether it was really job-related or not. Initially, I believe there's a footnote in the Posey case indicates that Mr. Posey claimed he had all kinds of responsibilities at the time that he wrote the complaint letter. Later on, he retracts from that when he realizes that might not give him the ability to get out of a qualified immunity defense. But nonetheless, the point is where you've got disputed facts, the purpose of an interlocutory appeal is not to give public officials a second bite at the apple, not to get a second review of disputed facts. Judge Wright here said, when he denied the appellant's attempt to dispose of this case on summary judgment, that the county of Los Angeles and the members of the DA's office who were defendants had – and these are his words – rained down on plaintiff and appellee David Eng persistently. It wasn't a close call for him. Mr. Eng went from being the preeminent prosecutor of toxic crimes in the office. Someone who was so highly regarded that he was tabbed by Steve Cooley to head up the investigation into environmental crimes on this Belmont task force, this high-profile task force. As Your Honor correctly pointed out, the second he gets into office, boom, he's got this high-profile task force. He made promises in his campaign, heads will roll over Belmont. And he appointed David Eng as the lead environmental prosecutor to look into that. And his job duties, the reason why we won below, his job duties were to look at environmental crimes, not financing, which wasn't even a topic of the task force. The task force was, were there environmental crimes or was there contractor fraud? He was in charge of environmental crimes. Fred Maksud and George Castell, who gave very helpful testimony for us, were in charge. He built a school on land that was toxic. Well, it turns out the land wasn't toxic, Your Honor. It wasn't. And that was the point of Mr. Eng's conclusion. But notwithstanding everybody saying it was so toxic, it was so awful, you know, there are all kinds of crimes committed, they had expert after expert look at the soils, look at the ambient air, and he concluded that toxicity here is not significant and there are no crimes. Now, we grant that that statement, when he made that statement, no environmental crimes, we grant that under Garcetti, we have no protection for those statements. That's not what we're pursuing. We've got two incidents of speech that are protected. The first is in that meeting that he had where he talked about his conclusions. He also pointed out, you know, Anthony Patchett and Mr. Tomka have improperly disclosed to the IRS that the financing for Belmont was obtained fraudulently. And that's not true. And it's having a huge effect because it's causing the bonds to get revoked. It's going to cost the LAUSD tens of millions of dollars. This is wrong. Somebody should do something about this. Now, that was not part of his job. He had no responsibility for those issues. And in contradistinction to the cases that Mr. Choi cites, Steve Cooley's response to him was shut up. This is not your job. These are not your duties. I don't want to hear about it. Now, the cases where the courts have found that qualified immunity is proper, where the cases have found that under Garcetti, somebody's job-related speech is unprotected, involves speech that's compelled by the job. In Garcetti, he had to write the memo. And there was no dispute that it was job-related. Here the judge found there were disputed factual issues. Correct. So why doesn't that end your argument? It should. But I'm just moving on to backup arguments. You know, if Your Honors want to let me go, that's great. But I do want to address the other arguments that they raised. Because, yes, you're right. It should end the issue. I mean, every court, every judge that's looked at this case, and we've been through motions to dismiss with Judge Morrow, motions to compel discovery, motions for summary judgment in front of Judge Wright. Every judge that's looked at this has concluded that we have a basis to submit these claims to a jury. And that's all we're really asking for at this point. We're not contending that they don't have a defense of qualified immunity. We're just contending we're entitled to present it to a jury. Isn't the lawyer speech, the Wasson issue, one of the law? It's a, there's a three-part test that's addressed in Wasson, Your Honor. It's exactly, and yes, Judge Morrow relied on Wasson when she denied their motion to dismiss. And I think we satisfied all three of those, as Judge Morrow indicated that she believed we had on the 12b6 motion. Injury in fact, did my client, and it's a silly argument. The article that we rely on as protected speech says DA claims payback for Belmont investigation. It doesn't say DA's lawyer claims payback, DA mysteriously silent, I wonder whether he agrees. All of the officials who are defendants in this case were deposed. All of them were asked, when you saw that statement in the L.A. Times, did you believe it came from David Eng? Their response was obvious, yes. Yes, of course we thought it came from David Eng. They didn't think that this was Mark Garagos acting on his own without David Eng's permission. God forbid that should ever happen. Mr. Garagos has been very, very helpful in this case. So, yes, Your Honor, Wasson is a, the point of, the point that they try to make is they don't even argue that the L.A. Times speech is unprotected under Garcetti. Their argument is the contours of the constitutional violation that was occasioned by their retaliating against Mr. Eng for the speech that was in the L.A. Times article. Their argument is that speech, we're entitled to qualified immunity because the contours of that constitutional right were sufficiently vague, meaning our guys couldn't have known that it was uncool to retaliate against Mr. Eng for statements made in the L.A. Times that he was the victim of political payback. It's, it's not a good argument for two reasons. First, the triad case in the Seventh District actually addresses this issue head on and says when we're talking about the contours of a constitutional violation for purposes of qualified immunity analysis, you, the public officials, you don't get the benefit of any standing rules out there that might make it difficult for the plaintiff to sue. That's not the kind of constitutional contour we're talking about. What we're talking about is the constitutional contours of your conduct and whether it's constitutional or not. Not whether you get the benefit of a third-party standing argument. So the fact that, you know, Mr. Choi's argument would be, well, it's an issue. We've argued about it. Therefore, it's got to be unclear. That's not, that's not correct under the standards that get applied. Your Honors, let's talk a little bit about the facts that we presented in terms of the retaliation that took place. As I said, Mr. Eng went from being the preeminent prosecutor of toxic crimes in the office to, for the last six years, heading up, or not even heading up, doing juvenile work in Pomona and East Los Angeles. The last toxic crime case he ever worked on was Belmont. So how do you go from being the guy who's so good that the DA taps you for his biggest high-profile task force to somebody who's so good that you near a toxic crime case again and you've got to do juvie work? I'm sure, Your Honor, as an ex-prosecutor is familiar with the term highway therapy, freeway therapy. That's what they've been giving Mr. Eng for the last six years. Did you point at me? No, no. Judge Hawkins, I'm sorry. Your aim is off. I didn't mean to, Your Honor. I didn't mean to. And it's not just the transfer. He was accused of a crime that was so ludicrous that the deputy district attorney in charge of referring crimes to the Attorney General's office at the time said, in his own words, it's a crock of shit. He testified it was a crock of shit and that his signature in the referral form to the AG's office, by the way, Mr. Choi says we are not complaining about the referral to the AG's office untrue. It is very much one of the retaliatory acts we complain about. And it's because the DA's office waited until the statute of limitations on the alleged crime had apparently almost run before they referred it to the AG's office, even though Steve Cooley said normally they refer anything to the AG's office involving a DA within a nanosecond because of the obvious conflict. They waited until right before the statute of limitations had run to refer it to the AG's office. Deputy District Attorney David Guthman was in charge of those referrals. His signature appears on the referral letter, only he didn't sign it. He said he didn't sign it. He said it was a crock of shit and he doesn't know who signs his name on that referral letter. And the AG's office initially filed against Mr. Eng. The way they talk in the DA's office. In the DA's office, I guess sometimes you'll have to ask Judge Hawkins. But the point is that the AG's office, their own spokesman said after the case was dismissed, we didn't do any independent investigation on this. We didn't know whether this was a good case or not because we got it so late. So one of our retaliation claims is not only the referral to the AG's office of a bogus crime, but the intentional delay so that the AG's office didn't do an independent investigation of it. Did the fact of the referral reach public light? Absolutely. It was part of the L.A. Times article, the February 2003 article. Anyway, Your Honor, in light of the onslaught of what the DA's office did to David Eng, it's not surprising that they've done everything they can litigation-wise as well. But as we said, every motion, every judge that's looked at this has said that Mr. Eng's entitled to his day in court. And that's all we're asking for here. Unless you have any other questions, I'll submit. Thank you. Your Honor, I'd just like to address a few of the things that Mr. Ritt talked about. First, all of the facts and allegations relating to alleged retaliation. That's not legally relevant to the Garcetti question at hand. What Garcetti requires is for the district court and now this Court to examine the specific nature, substance, context of the statements that Mr. Eng made regarding his belief about potential misconduct by other members of the task force. And I would submit again, Your Honors, that those statements were not expressed pursuant to his rights as a citizen. They were expressed because he was a prosecutor assigned to the task force. There's no other reason that he made those statements. He had concerns that these issues, these activities could somehow undermine the objective and goal of the task force. Do you agree that these are essentially fact questions related to them? I think the fact, this is the way the plaintiff alleges his statements. I'm not trying to characterize the statements in any other way, but I'm basically, essentially relying on the allegations in the complaint. And I think as the Seventh Circuit did in the Davis v. Cook County case. Fifth Circuit. I think that was it. And if I'm wrong, maybe I, there's a, in the case cited in the Hawkins, in the Posey opinion, where they said, even though this usually may be a mixed question of fact and law, if a rational trial of fact can find that this was speech that was expressed pursuant to his or her employment, the claim can be dismissed before trial. And that's exactly what happened in that case. And the speech I listened to in that case was a lot more ambiguous in terms of whether or not it is barred by varsity than the speech in this case. In that case, they affirmed the granting of summary judgment because they found no rational trial of fact could find that the plaintiff was speaking as a citizen when she submitted this memorandum to various hospital officials regarding various unpleasant experiences that she had. You know, see, that's, we have a huge problem in hospitals in this country today with doctors and nurses not washing their hands. The most dangerous place you could be in is in a hospital. You know that? A dangerous place. So if we get a nurse that sees what's going on and sees the problems and goes public with them, then we ought to give her a medal for courage and public service and merit because we need more people like that because these are issues of great, great public concern. All you got to do is, you know, read the L.A. Times. I know that some hospitals have issues with staff infections and things like that. It's all over. It's all over. But the speech in that, I believe the name of the case is Davis v. Cook County. The speech did not relate to, you know, these very tremendously broad issues. When they first came up with this qualifying immunity, it was, well, we really want to get rid of these cases where it's just almost absolutely clear that this officer didn't violate anyone's constitutional right. People are just bringing a lawsuit against them. And those are the cases that qualified immunity was really thought to be a way to clear the court's calendars. But, you know, let me tell you this. You can try a case a lot faster and quicker with an expenditure of less money if you just go to trial and have faith in the American jury system. They'll come up with the right result. And that's what I believe. So this whole idea of how complicated all this is, this is something that ought to be resolved by a jury. So you know how I feel about it. Well, Your Honor, respectfully, the first prong of the qualifying immunity analysis is whether the alleged actions give rise to actual constitutional violation. And that's generally a legal question. And, you know, you can consider the facts in the plaintiff's favor. You're supposed to. And, again, if you look at the cases that have been issued since the Garcetti opinion, and if you look at the speech with respect to what Mr. Eng told other task force members, other DA personnel regarding his concerns about the activities of two task force members, that that statement is not a statement that he uttered as a citizen. He uttered it as an employee of the DA's office assigned to the task force. And under Garcetti, and if you glean the way that the Garcetti test has been applied in the many cases that have been published since Garcetti, that statement, I would submit, Your Honor, is not entitled to First Amendment protection. It simply is not citizen speech. Well, okay. Yeah. Just take another look at Judge Hawkins' case. You might feel better in the Seventh Circuit. The Seventh Circuit has issued many instructive cases, Your Honor, and I think they're definitely worth a look. Well. Thank you, Your Honor. But we're the ninth. And the circuits are all over the place. Yeah, circuits are all over the place. Okay. Let's take up the next one.
judges: Pregerson, Hawkins, Cudahy